IN THE UBNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| E.B.M., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| RAMCO HEALTHCARE HOLDINGS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, E.B.M., Inc., by and through its counsel, DeBlasio Law Group, LLC, for its Complaint against Defendant Ramco Healthcare Holdings, LLC, alleges and states as follows:

## NATURE OF THE CASE

1. Plaintiff, E.B.M., Inc. ("*EBM*"), provides clean, healthy, safe, environments for health care and other commercial businesses throughout the Midwest. EBM brings this action to collect for services EBM has provided to medical office buildings owned by Ramco in River Forest and Oak Park, Illinois.

## PARTIES, JURISDICTION, AND VENUE

2. EBM is an Illinois domestic corporation headquartered in Schaumburg, Illinois.

3. Ramco Healthcare Holdings, LLC ("*Ramco*") is a Delaware limited liability company. EBM is informed and believes that Mr. Reddy Rathnaker Patlola is Ramco's sole member and that Mr. Patlola is a citizen of the State of New Jersey.

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C § 1332 because EBM is a citizen of the State of Illinois, Ramco is, on information and belief, a citizen of

the States of New Jersey and Delaware, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c)(2) because Ramco has and continues to do business and avail itself of the markets within this district, and Ramco is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

6. EMB has provided commercial cleaning services and products in the State of Illinois since 1962.

7. On or about October 2, 2023, Pipeline Health Systems, LLC ("**Pipeline Parent**") filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (No. 22-90291) ("**Pipeline Parent Bankruptcy**"), Bankruptcy Judge Marvin Isgur, presiding.

8. Also, on or about October 2, 2022, West Suburban Holdings, LLC (No. 22-90313) ("**West Suburban Bankruptcy**"), and River Forest Holdings, LLC (No. 22-90305) ("**River Forest Bankruptcy**") each filed petitions for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.

9. On or about October 3, 2022, Bankruptcy Judge Isgur entered an Order in the Pipeline Parent Bankruptcy directing that the West Suburban Bankruptcy and the River Forest Bankruptcy, along with numerous other related chapter 11 proceedings, be jointly administered under the case number assigned to the Pipeline Parent Bankruptcy.

10. As part of the Pipeline Parent Bankruptcy, defendant Ramco agreed to purchase certain real estate and improvements thereon owned by River Forest Property Holdings, LLC ("**River Forest Holdings**") and West Suburban Property Holdings, LLC ("**West Suburban**

*Holdings*") pursuant to a **Real Estate Asset Purchase Agreement by and Among Ramco Healthcare Holdings, LLC and West Suburban Property Holdings, LLC, River Forest Property Holdings, LLC, Weiss Property Holdings, LLC, and Weiss MOB Property Holdings, LLC** ("*Ramco Purchase Agreement*"). (A copy of the Ramco Purchase Agreement, with relevant Exhibits and Schedules is attached hereto as Exhibit 1.)

11. Pursuant to the terms of the Ramco Purchase Agreement, River Forest Holdings agreed to sell to Ramco the real estate located at 7420 Central Avenue, 420 Williams Street, and 741 West Lake Street ("*River Forest Real Estate*"), each located in River Forest, Illinois.

12. Also pursuant to the terms of the Ramco Purchase Agreement, West Suburban Holdings agreed to sell to Ramco the real estate on which a medical professional office building operated ("*West Suburban Real Estate*").

13. On or about November 30, 2022, Bankruptcy Judge Isgur entered an Order approving the Ramco Purchase Agreement. (Pipe Parent Bankruptcy at ECM no. 601.)

14. Ramco's purchase of the River Forest Real Estate and West Suburban Real Estate, made pursuant to the Ramco Purchase Agreement, closed on or about December 29, 2022 ("*Closing*").

**The River Forest and West Suburban Contracts**

15. Prior to the River Forest Bankruptcy, EBM and River Forest Holdings had entered into three (3) Service Contracts (collectively "*River Forest Contracts*"):

   a. Service Contract (Contract No. 386975), as amended May 18, 2022, (Contract Amendment No. 386975.1) (collectively "*River Forest Service Contract – Building A*"), a copy of which is attached hereto as Exhibit 2;

   b. Service Contract (Contract No. 386531), as amended April 28, 2022, (Contract Amendment No. 386531.1) (collectively "*River*

*Forest Service Contract – Building B*"), a copy of which is attached hereto as Exhibit 3; and

c. Service Contract (Contract No. 386982), as amended May 18, 2022, (Contract Amendment No. 386982.1) (collectively "*River Forest Service Contract – Building C*"), a copy of which is attached hereto as Exhibit 4.

16. Also prior to the West Suburban Bankruptcy, EBM and West Suburban Holdings had entered into a Service Contract (Contract No. 386984), as amended on May 17, 2022 (Contract Amendment No. 386984.1) (collectively "*West Suburban Service Contract*"). (A copy of the West Suburban Service Contract, as amended, is attached hereto as Exhibit 5.)

17. As part of Ramco's purchase of the River Forest Real Estate, Ramco assumed the River Forest Contracts. (Ex. 1 at Schedule 2.1(f).)

18. As part of Ramco's purchase of the West Suburban Real Estate, Ramco assumed the West Suburban Service Contract. (Ex. 1 at Schedule 2.1(f).)

**COUNT I**
**(Breach of River Forest Service Contract – Building A)**

19. EBM realleges and incorporates by reference paragraphs 1 through 18, as if fully set forth herein.

20. After the Ramco Purchase Agreement closed, EBM continued to provide services to Ramco, at the building having the street address 7411 Lake Street, River, Forest, Illinois ("***Building A***"), under the River Forest Service Contract – Building A. EBM provided those services at Ramco's request.

21. EBM provided post-Closing services at Building A for the benefit of Ramco.

22. From the Closing through March 2023, Ramco paid, in full, each and every invoice it received from EBM for services provided by EBM to Ramco at Building A.

23. From April 2023 to about mid-June 2023, EBM provided janitorial services to Building A, which Ramco accepted without complaint ("**Building A Services**").

24. EBM has performed all its obligations under the River Forest Service Contract – Building A.

25. EBM sent invoices to Ramco for the Building A Services totaling $18,105.78, for services rendered in April, May, and June 2022. (A copy of EBM's invoices for the Building A Services is attached hereto as Exhibit 6 ("**Building A Invoices**").)

26. Ramco breached the River Forest Service Contract -Building A by failing to pay EBM for the Building A Services,

27. Prior to filing this lawsuit, EBM made several demands that Ramco pay the Building A Invoices.

28. Despite those demands, Ramco has not paid EBM for the Building A Services, leaving $18,105.78 due and owing under the River Forest Service Contract – Building A.

29. Under Illinois law, EBM is entitled to interest on the unpaid Building A Invoices from no later than July 1, 2023, through the date on which EBM receives payment in full at the rate of five percent (5%) per annum. 815 ILCS 205/2.

30. EBM is also entitled to recover all of its costs and expenses of litigation, along with EBM's reasonable attorneys' fees, in the prosecution of this claim. (Ex. 3 at ¶ 21(j).)

**WHEREFORE**, E.B.M. Inc. prays that the Court enter judgment in its favor and against Ramco Healthcare Holdings, LLC, in an amount not less than $18,105.78, plus prejudgment interest, along with Plaintiff's costs, expenses, and reasonable attorneys' fees, and for such other and further relief as the Court deems to be just and equitable.

## COUNT II
### (Account Stated River Forest– Building A)

31. EBM realleges and incorporates by reference paragraphs 1 through 18, as if fully set forth herein. This count is pled in the alternative to Count I.

32. From and after the Closing, Ramco owned the real estate located at 7411 Lake Street, River Forest, Illinois ("**Building A**").

33. From and after the Closing, EBM provided services at Building A for the benefit of Ramco.

34. From the Closing through March 2023, Ramco paid, in full, each and every invoice it received from EBM for services provided by EBM to Ramco at Building A.

35. From April 2023 to about mid-June 2023, EBM provided janitorial services to Building A, which Ramco accepted without complaint ("**Building A Services**").

36. EBM sent invoices to Ramco for the Building A Services totaling $18,105.78, for services rendered in April, May, and June 2022. (*See* Exhibit 6 ("**Building A Invoices**").)

37. EBM has performed all of its obligations under the Building A Invoices.

38. Ramco received the Building A Invoices and has never objected to them.

39. Despite repeated demands, the Building A Invoices remain unpaid.

40. Ramco has retained the Building A Invoices beyond a reasonable time without objecting to them. Ramco's retention of the Building A Invoices constitutes an acknowledgement and recognition by Ramco of the correctness of the account and constitutes a promise to pay the Building A Invoices.

41. On or about Friday, June 16, 2023, Ramco advised EBM that Ramco would submit the Building A Invoices for payment in the following week's check run. In that

communication, Ramco did not object to any of the amounts due in the Building A Invoices and assented to the correctness of the Building A Invoices.

42. Notwithstanding Ramco's statement that the Building A Invoices would be processed for payment the week of June 19, 2023, Ramco has paid none of the Building A Invoices.

43. Under Illinois law, EBM is entitled to interest on the unpaid Building A Invoices from no later than July 1, 2023, through the date on which EBM receives payment in full at the rate of five percent (5%) per annum. 815 ILCS 205/2.

**WHEREFORE**, E.B.M. Inc. prays that the Court enter judgment in its favor and against Ramco Healthcare Holdings, LLC, in an amount not less than $18,105.78, plus prejudgment interest, along with Plaintiff's costs, expenses, and for such other and further relief as the Court deems to be just and equitable.

**COUNT III**
**(Breach of River Forest Service Contract – Building B)**

44. EBM realleges and incorporates by reference paragraphs 1 through 18, as if fully set forth herein.

45. Prior to the Closing, EBM provided $18,864.96 of services to River Forest Holdings under the River Forest Service Contract – Building B, which was due and owing at the time of the Closing ("***Pre-Closing Services***").

46. At the Closing, Ramco became responsible for the $18,864.96 that was due on owing to EBM under the River Forest Service Contract – Building B for the Pre-Closing Services.

47. After the Closing, EBM continued to provide janitorial services to the building that has the street address 420 Williams Street, River Forest, Illinois ("**Building B**") at Ramco's request.

48. From the Closing through March 2023, Ramco paid, in full, each and every invoice it received from EBM for services provided by EBM to Ramco at Building B.

49. From April 2023 to about mid-June 2023, EBM provided janitorial services to Building B, which Ramco accepted without complaint ("**Building B Services**").

50. EBM sent invoices to Ramco for the Building B Services totaling $5,213.62, for services rendered in April, May, and June 2022. (A copy of the EBM invoices for the Pre-Closing Services and Building B Services is attached hereto as Exhibit 7.)

51. EBM has performed all its obligations under the River Forest Service Contract – Building B.

52. Ramco breached the River Forest Service Contract – Building B by failing to pay EBM for the Pre-Closing Services.

53. Ramco breached the River Forest Service Contract – Building B by failing to pay EBM for the Building B Services.

54. Despite repeated demands, Ramco has failed to pay EBM for either the Pre-Closing Services or the Building B Services, leaving $24,078.58 due and owing EBM under the River Forest Service Contract – Building B.

55. Under Illinois law, EBM is entitled to interest on the unpaid Building B Invoices from no later than July 1, 2023, through the date on which EBM receives payment in full at the rate of five percent (5%) per annum. 815 ILCS 205/2.

56. EBM is also entitled to recover all of its costs and expenses of litigation, along with EBM's reasonable attorneys' fees, in the prosecution of this claim. (Ex. 3 at ¶ 21(j).)

**WHEREFORE**, E.B.M. Inc. prays that the Court enter judgment in its favor and against Ramco Healthcare Holdings, LLC, in an amount not less than $24,078.58, plus prejudgment interest, along with Plaintiff's costs, expenses, and reasonable attorneys' fees, and for such other and further relief as the Court deems to be just and equitable.

## COUNT IV
### (Account Stated River Forest – Building B)

57. EBM realleges and incorporates by reference paragraphs 1 through 18, as if fully set forth herein. This count is pled in the alternative to Count III.

58. Prior to the Closing, EBM provided $18,864.96 of services to River Forest Holding, at Building B which was due and owing at the time of the Closing.

59. Ramco received the invoices for the $18,864.96 prior to the Closing and has never objected to them ("**Pre-Closing Services**").

60. At the Closing, Ramco knew of and became responsible for the $18,864.96 that was due on owing to EBM at the time of the Closing.

61. After the Closing, EBM continued to provide janitorial services to the building that has the street address 420 Williams Street, River Forest, Illinois ("**Building B**") at Ramco's request.

62. From December 2022, through March 2023, Ramco paid, in full, each and every invoice it received from EBM for services provided by EBM to Ramco at Building B during that time period.

63. From April 2023 to about June 2023, EBM provided janitorial services to Building B, which Ramco accepted without complaint ("**Building B Services**").

64. EBM sent invoices to Ramco for the Building B Services totaling $5,213.62, for services rendered in April, May, and June 2022. (A copy of the EBM invoices for the Pre-Closing Services and Building B Services is attached hereto as Exhibit 7 (collectively "**Building B Invoices**").)

65. EBM has performed all of its obligations under the Building B Invoices.

66. Ramco received the Building B Invoices and has never objected to them.

67. Despite repeated demands, the Building B Invoices remain unpaid.

68. Ramco has retained the Building B Invoices beyond a reasonable time without objecting to them. Ramco's retention of the Building B Invoices constitutes an acknowledgement and recognition by Ramco of the correctness of the account and constitutes a promise to pay the Building B Invoices.

69. On or about Friday, June 16, 2023, Ramco advised EBM that Ramco would submit the Building B Invoices for payment in the following week's check run. In that communication, Ramco did not object to any of the amounts due in the Building B Invoices and assented to the correctness of the Building B Invoices.

70. Notwithstanding Ramco's statement that the Building B Invoices would be processed for payment the week of June 19, 2023, Ramco has failed and refused to pay any of the Building B Invoices.

71. Due to Ramco's unreasonable and vexatious delay in payment, EBM is entitled to interest on the unpaid $24,078.58, from no later than July 1, 2023, through the date on which EBM receives payment, at the rate of five percent (5%) per annum. 815 ILCS 2015/2.

**WHEREFORE**, E.B.M. Inc. prays that the Court enter judgment in its favor and against Ramco Healthcare Holdings, LLC, in an amount not less than $24,078.58, plus prejudgment

interest, along with Plaintiff's costs, expenses, and for such other and further relief as the Court deems to be just and equitable.

## COUNT V
### (Breach of River Forest Service Contract – Building C)

72. EBM realleges and incorporates by reference paragraphs 1 through 18, as if fully set forth herein.

73. After the Ramco Purchase Agreement closed, EBM continued to provide services to Ramco, at the building having the Street address 7420 West Central, River Forest, Illinois ("**Building C**"), under the River Forest Service Contract – Building C. EBM provided those services at Ramco's request.

74. From the Closing through March 2023, Ramco paid, in full, each and every invoice it received from EBM for services provided by EBM to Ramco at Building C during that time period.

75. From and after the Closing, EBM provided services at Building C for the benefit of Ramco.

76. From April 2023 to about mid-June 2023, EBM provided janitorial services to Building C, which Ramco accepted without complaint ("**Building C Services**").

77. EBM has performed all of its obligations under the River Forest Service Contract – Building C.

78. From the Closing through March 2023, Ramco paid, in full, each and every invoice it received from EBM for services provided by EBM to Ramco at Building C.

79. EBM sent invoices to Ramco for the Building C Services totaling $7,564.00, for services rendered in April, May, and June 2022. (Copy of EBM's invoices for the Building C Services is attached hereto as Exhibit 8 ("**Building C Invoices**").)

80. Ramco breached the River Forest Service Contract – Building C by failing to pay EBM for the Building C Services.

81. Prior to filing this lawsuit, EBM made several demands that Ramco pay the Building C Invoices.

82. Despite those demands, Ramco has not paid EBM for the Building C Services, leaving $7,564.00 due and owing EBM under the River Forest Service Contact – Building C.

83. Under Illinois law, EBM is entitled to interest on the unpaid Building C Invoices from no later than July 1, 2023, through the date on which EBM receives payment in full at the rate of five percent (5%) per annum. 815 ILCS 205/2.

84. EBM is also entitled to recover all of its costs and expenses of litigation, along with EBM's reasonable attorneys' fees, in the prosecution of this claim. (Ex. 5 at ¶21(j).)

**WHEREFORE**, E.B.M. Inc. prays that the Court enter judgment in its favor and against Ramco Healthcare Holdings, LLC, in an amount not less than $7,564.00, plus prejudgment interest, along with Plaintiff's costs, expenses, and reasonable attorneys' fees, and for such other and further relief as the Court deems to be just and equitable.

### COUNT VI
### (Account Stated River Forest – Building C)

85. EBM realleges and incorporates by reference paragraphs 1 through 18, as if fully set forth herein. This count is pled in the alternative to Count V.

86. From and after the Closing, Ramco owned the real estate located at 7420 West Central Avenue, River Forest, Illinois ("**Building C**").

87. From and after the Closing, EBM provided services at Building C for the benefit of Ramco.

88. From the Closing through March 2023, Ramco paid, in full, each and every invoice it received from EBM for services provided by EBM to Ramco at Building C.

89. From April 2023 to about mid-June 2023, EBM provided janitorial service to Building C, which Ramco accepted without complaint ("**Building C Services**").

90. EBM sent invoices to Ramco for the Building C Services, for services totaling $7,564.00. rendered in April, May, and June 2022. (*See* Exhibit 8 ("**Building C Invoices**").)

91. EBM has performed all of its obligations under the Building C Invoices.

92. Ramco received the Building C Invoices and has never objected to them.

93. Despite repeated demands, the Building C Invoices remain unpaid.

94. Ramco has retained the Building C Invoices beyond a reasonable time without objecting to them. Ramco's retention of the Building C Invoices constitutes an acknowledgement and recognition by Ramco of the correctness of the account and constitutes a promise to pay the balance due in each of the Building C Invoices.

95. On Friday, June 16, 2023, Ramco advised EBM that Ramco would submit the Building C Invoices for payment in the following week's check run. In that communication, Ramco did not object to any of the amounts due in the Building C Invoices and assented to the correctness of the Building C Invoices.

96. Notwithstanding Ramco's statement that the Building C Invoices would be processed for payment the week of June 19, 2023, Ramco has failed and refused to pay any of the Building C Invoices.

97. Under Illinois law, EBM is entitled to interest on the unpaid Building C Invoices from no later than July 1, 2023, through the date on which EBM receives payment in full at the rate of five percent (5%) per annum. 815 ILCS 205/2.

WHEREFORE, E.B.M. Inc. prays that the Court enter judgment in its favor and against Ramco Healthcare Holdings, LLC, in an amount not less than $7,564.00, plus prejudgment interest, along with Plaintiff's costs, expenses, and attorneys' fees, and for such other and further relief as the Court deems to be just and equitable.

## COUNT VII
### (Breach of the West Suburban Service Contract)

98. EBM realleges and incorporates by reference paragraphs 1 through 18, as if fully set forth herein.

99. Prior to the Closing, EBM provided $14,685.00 of services to West Suburban Holdings under the West Suburban Service Contract, which was due and owing at the time of the Closing ("**West Suburban Pre-Closing Services**").

100. At the Closing, Ramco became responsible for the $14,685.00 that was due and owing to EBM under the West Suburban Service Contract.

101. After the Closing, EBM continued to provide janitorial services to medical professional office building, located 3 Erie Court, Oak Park, Illinois ("**West Suburban Office Building**"), under the West Suburban Service Contract. EBM provided those services at Ramco's request.

102. From and after the Closing through March 2023, Ramco paid, in full, each and every invoice it received from EBM for services provided by EBM to Ramco at the West Suburban Office Building.

103. From April 2023 to about mid-June 2023, EBM provided janitorial services to the West Suburban Office Building, which Ramco accepted without complaint ("**West Suburban Services**").

104. EBM has performed all of its obligations under the West Suburban Service Contract.

105. EBM sent invoices to Ramco for the West Suburban Services totaling $24,839.46, for services rendered in April, May, and June 2022. (A copy of EBM's invoices for the West Suburban Service Contract is attached hereto as Exhibit 9 ("***West Suburban Invoices***").)

106. Ramco breached the West Suburban Contract by failing to pay EBM for the West Suburban Services.

107. Prior to filing this lawsuit, EBM made several demands that Ramco pay the West Suburban Invoices.

108. Despite those demands, Ramco has not paid EBM for the West Suburban Services, leaving $24,839.46 due and owing under the West Suburban Service Contract.

109. Under Illinois law, EBM is entitled to interest on the unpaid West Suburban Invoices from no later than July 1, 2023, through the date on which EBM receives payment in full at the rate of five percent (5%) per annum. 815 ILCS 205/2.

110. EBM is also entitled to recover all of its costs and expenses of litigation, along with EBM's reasonable attorneys' fees, in the prosecution of this claim. (Ex. 6 at ¶21(j).)

**WHEREFORE**, E.B.M. Inc. prays that the Court enter judgment in its favor and against Ramco Healthcare Holdings, LLC, in an amount not less than $39,524.46, plus prejudgment interest, along with Plaintiff's costs, expenses, and attorneys' fees, and for such other and further relief as the Court deems to be just and equitable.

## COUNT VIII
### (Account Stated West Suburban Office Building)

111. EBM realleges and incorporates by reference paragraphs 1 through 6, as if fully set forth herein. This count is pled in the alternative to Count VII.

112. From and after December 2, 2022, Ramco owned the real estate located at 3 Erie Court, Oak Park, Illinois ("*West Suburban Office Building*").

113. Prior to Closing, EBM provided $14,685.00 of services to West Suburban Holdings under the West Suburban Service Contract, which was due and owing at the time of the Closing ("*West Suburban Pre-Closing Services*").

114. At the Closing Ramco became responsible for the $14,685.00 that was due and owing to EBM under the West Suburban Service Contract for the West Suburban Pre-Closing Services.

115. After the Closing, EBM continued to provide janitorial services to the West Suburban Office Building for the benefit of Ramco.

116. Ramco paid, in full, each and every invoice it received from EBM for services provided by EBM to Ramco at the West Suburban Office Building, from the Closing through March 2023.

117. From April 2023 to mid-June 2023, EBM continued to provide janitorial services to the West Suburban Office Building, which Ramco accepted without complaint ("*West Suburban Services*").

118. EBM sent invoices to Ramco for West Suburban Services totaling $24,839.46, for services rendered in April, May, and June 2022. *See* Ex. 9 ("*West Suburban Invoices*").

119. EBM performed all of its obligations under the West Suburban Invoices.

120. Ramco received the West Suburban Invoices and has never objected to them.

121. Despite repeated demands, the West Suburban Invoices remain unpaid.

122. Ramco has retained the West Suburban Invoices beyond a reasonable time without objecting to them. Ramco's retention of the West Suburban Invoices constitutes an acknowledgment and recognition by Ramco of the correctness of the account and constitutes a promise to pay the balance due in each of the West Suburban Invoices.

123. On or about Friday June 16, 2023, Ramco advised EBM that Ramco would submit the West Suburban Invoices for payment in the following week's check run. In that communication, Ramco did not object to any of the amounts due in the West Suburban Invoices and assented to the correctness of the West Suburban Invoices.

124. Notwithstanding Ramco's statement that the West Suburban Invoices would be processed for payment the week of June 19, 2023, Ramco has failed and refused to pay any of the West Suburban Invoices.

125. Under Illinois law, EBM is entitled to interest on the unpaid West Suburban Invoices from no later than July 1, 2023, through the date on which EBM received payment in full at the rate of five percent (5%) per annum. 815 ILCS 205/2

**WHEREFORE**, E.B.M. Inc. prays that the Court enter judgment in its favor and against Ramco Healthcare Holdings, LLC, in an amount not less than $39,524.46, plus pre-judgment

interest, along with Plaintiff's costs, expenses, and for such other and further relief as the Court deems to be just and equitable.

                                          Respectfully submitted,

                                          E.B.M., INC.

                              By:    /s/ Antonio DeBlasio
                                      One of Its Attorneys

Antonio DeBlasio, Esq.
Brian A. Bosch, Esq.
DEBLASIO LAW GROUP LLC
2001 Midwest Road, Suite 100
Oak Brook, Illinois 60523
T: (630) 560-1123
E: deblasio@dgllc.net
E: bosch@dgllc.net

*Attorneys for E.B.M., INC.*